586 F.Supp. 30 (1984)
BAY COLONY CONDOMINIUM OWNERS ASSOCIATION, an Illinois not-for-profit Corporation, and Bay Colony Condominium Owners Association # 2, an Illinois not-for-profit Corporation, Plaintiffs,
v.
Thomas J. ORIGER, individually, and O'Hare International Bank, as Trustee under Trust Agreement known as Trust No. 506, Defendants.
No. 83 C 7604.
United States District Court, N.D. Illinois, E.D.
April 13, 1984.
*31 Jordan I. Shifrin, Shifrin & Waitzman, Ltd., Arlington Heights, Ill., for plaintiffs.
Richard C. Jones, Jr., Law Office of Marshall J. Moltz, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
ASPEN, District Judge:
Plaintiffs Bay Colony Condominium Owners Association and Bay Colony Condominium Owners Association # 2 ("the Associations") bring this action for declaratory judgment, injunctive relief and damages under the Condominium and Cooperative Abuse Relief Act of 1980 ("the Condominium Act"), 15 U.S.C. § 3601 et seq., against defendants Thomas J. Origer ("Origer") and O'Hare International Bank. The Associations seek a determination by this Court that a recreational facilities lease, under which the owners of the Bay Colony condominium units are obligated to make payments to Origer for a total of 99 years, is unconscionable and invalid. Defendants have filed a motion to dismiss the suit, claiming that the Condominium Act is unconstitutional in two respects. For the reasons set forth below, defendants' motion to dismiss is denied.

*32 I. The Commerce Clause

Defendants first contend that Congress exceeded its power under the Commerce Clause of the United States Constitution when it passed the Condominium Act.[1] Although they concede that congressional power to regulate commerce is quite broad, defendants argue that the Condominium Act cannot be applied constitutionally to the Bay Colony recreational facilities lease because the lease has no significant effect on interstate commerce.
The Supreme Court's recent discussion of the Commerce Clause in Hodel v. Virginia Surface Mining and Reclamation Ass'n, 452 U.S. 264, 276-77, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981), is instructive:
Judicial review in this area is influenced above all by the fact that the Commerce Clause is a grant of plenary authority to Congress. See National League of Cities v. Usery, supra [426 U.S. 833], at 840, 96 S.Ct. [2465], at 2468 [49 L.Ed.2d 245]; Cleveland v. United States, 329 U.S. 14, 19, 67 S.Ct. 13, 15, 91 L.Ed. 12 (1946); NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 57 S.Ct. 615, 624, 81 L.Ed. 893 (1937). This power is "complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the constitution." Gibbons v. Ogden, 9 Wheat. 1, 196, 6 L.Ed. 23 (1824). Moreover, this Court has made clear that the commerce power extends not only to "the use of channels of interstate or foreign commerce" and to "protection of the instrumentalities of interstate commerce ... or persons or things in commerce," but also to "activities affecting commerce." Perez v. United States, 402 U.S. 146, 150, 91 S.Ct. 1357, 1359, 28 L.Ed.2d 686 (1971). As we explained in Fry v. United States, 421 U.S. 542, 547, 95 S.Ct. 1792, 1795, 44 L.Ed.2d 363 (1975), "[e]ven activity that is purely intrastate in character may be regulated by Congress, where the activity, combined with like conduct by others similarly situated, affects commerce among the States or with foreign nations." See National League of Cities v. Usery, 426 U.S., at 840, 96 S.Ct., at 2468; Heart of Atlanta Motel, Inc. v. United States, supra, 379 U.S. [241], at 255, 85 S.Ct. [348], at 356 [13 L.Ed.2d 258]; Wickard v. Filburn, 317 U.S. 111, 127-128, 63 S.Ct. 82, 90, 87 L.Ed. 122 (1942); United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1942); United States v. Darby, supra, 312 U.S., [100] at 120-121, 61 S.Ct., [451] at 460 [85 L.Ed. 609].
In essence, defendants claim that the Constitution requires that a court determine whether interstate commerce is involved in each action brought under the Condominium Act. However, neither the Condominium Act itself nor the case law under the Commerce Clause supports this claim. It is true that Congress sometimes requires proof of an impact on interstate commerce as one of the substantive elements of a statutory violation. E.g., Chatham Condominium Associations v. Century Village, Inc., 597 F.2d 1002, 1008 (5th Cir.1979) (Sherman Act). But in other instances, Congress simply declares that an entire class of activities affects commerce  and the Supreme Court has repeatedly confirmed Congress' power to make such a declaration. Perez v. United States, 402 U.S. 146, 151-55, 91 S.Ct. 1357, 1360-62, 28 L.Ed.2d 686 (1971); Katzenbach v. McClung, 379 U.S. 294, 302-04, 85 S.Ct. 377, 383-84, 13 L.Ed.2d 290 (1964); United States v. Darby, 312 U.S. 100, 120-21, 61 S.Ct. 451, 460, 85 L.Ed. 609 (1941). The Condominium Act falls into this latter category of statutes. Instead of requiring a judicial determination of the effects on interstate commerce in each particular case, Congress has decided to regulate a class of activities within the cooperative and condominium housing markets.
The first section of the Condominium Act includes the following congressional findings:

*33 [C]ertain long-term leasing arrangements for recreation and other condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects may be unconscionable; in certain situations State governments are unable to provide appropriate relief; as a result of these leases, economic and social hardships may have been imposed upon cooperative and condominium owners, which may threaten the continued use and acceptability of these forms of ownership and interfere with the interstate sale of cooperatives and condominiums; appropriate relief from these abuses requires Federal action; and
[T]here is a Federal involvement with the cooperative and condominium housing markets through the operation of Federal tax, housing, and community development laws, through the operation of federally chartered and insured financial institutions, and through other Federal activities ... the creation of many condominiums and cooperatives is undertaken by entities operating on an interstate basis.
15 U.S.C. § 3601(a)(3) and (4). Given the congressional determination that long-term recreational lease arrangements affect interstate commerce, this Court should inquire only whether that finding is rational. As the Supreme Court has explained,
The task of a court that is asked to determine whether a particular exercise of congressional power is valid under the Commerce Clause is relatively narrow. The court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding. This established, the only remaining question for judicial inquiry is whether "the means chosen by [Congress] must be reasonably adapted to the end permitted by the Constitution." The judicial task is at an end once the court determines that Congress acted rationally in adopting a particular regulatory scheme.
Hodel v. Virginia Surface Mining and Reclamation Ass'n, 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981) (citations omitted).
There is a rational basis for Congress' finding that long-term recreational leases affect interstate commerce. As the legislative history shows, Congress received testimony from condominium unit owners, developers and Florida public officials before determining that these leases might interfere with the interstate sale of condominiums.[2] Congress also noted several connections between the cooperative and condominium housing markets and various federal laws, federally insured and chartered financial institutions and other entities operating on an interstate basis. 15 U.S.C. § 3601(a)(4). Contrary to the defendants' assertions, these connections apply logically to both new and converted condominium units. We cannot say that the means Congress chose to combat abusive leasing practices is inappropriate or unreasonable. Thus, we find that Congress acted rationally in adopting this particular regulatory scheme and did not exceed its power under the Commerce Clause in passing the Condominium Act.

II. The Due Process Clause

Defendants also contend that the Condominium Act deprives Origer of contractual rights without due process of law in violation of the Fifth Amendment of the United States. Because the Bay Colony recreational facilities lease was executed in 1973, over seven years before the Condominium Act became effective, defendants argue that the Condominium Act unconstitutionally interferes with Origer's "vested" right to payments under the lease.
We disagree. First, the Condominium Act interferes with no contractual rights, vested or otherwise. As demonstrated by *34 this case, the Condominium Act does provide for judicial review of leases entered into before the Act itself was passed. 15 U.S.C. § 3608(a)(6). A court reviewing a lease under the Condominium Act is granted wide latitude in fashioning remedies to cure any unconscionability in the lease. 15 U.S.C. § 3608(d); S.Rep. No. 736, 96th Cong., 2d Sess. 52, reprinted in 1980 U.S. Code Cong. & Ad.News 3506, 3559. However, these remedies are directed solely to unconscionable lease provisions, so there is no interference with any valid contract rights. It is axiomatic that a court may refuse to enforce a contract which was unconscionable at the time it was made. E.g., Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965); see also U.C.C. § 2-302 (1983) (unconscionable contracts for the sale of goods). Origer's payments under the lease will thus be affected only if the Court determines that the lease is unconscionable  and in such a case Origer would have no enforceable right to the payments. There can be no claim of denial of due process absent deprivation of either a liberty or property right. Webster v. Redmond, 599 F.2d 793, 801-02 (7th Cir.1979), cert. denied sub nom. Webster v. Board of Education of City of Chicago, 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980).
Furthermore, the Condominium Act provides ample opportunity to defendants to show that the lease is not unconscionable. The statute sets forth certain characteristics which lead to a rebuttable presumption of unconscionability, but it does not purport to invalidate per se any particular lease. Rather, the Condominium Act requires a court to consider evidence proffered by all the parties to the lease before finding the lease, or any portion of it, unconscionable. 15 U.S.C. § 3608(b). Thus, before Origer's contractual relationship with the Associations is affected in the least, he will have been afforded, through summary judgment proceedings or trial, an opportunity to contest the question of whether or not the subject lease is unconscionable. Due process, thereby, will be satisfied.[3]
Accordingly, defendants' motion to dismiss is denied. It is so ordered.
NOTES
[1] The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations and among the several States, and with the Indian Tribes." U.S. Const., art. I, § 8, cl. 3.
[2] Although the controversy concerning escalating long-term recreational leases has been "primarily centered within the State of Florida," Congress found that these leases exist in other states as well and have an effect on interstate commerce. See 15 U.S.C. § 3601(a)(3); S.Rep. No. 736, 96th Cong., 2d Sess. 51-52, reprinted in 1980 U.S.Code Cong. & Ad.News 3506, 3558-59.
[3] Compare the procedure under the Condominium Act with the state replevin provisions held unconstitutional in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (due process requires some type of hearing before debtor's goods are repossessed).