OPINION OF THE COURT
Harold Tompkins, J.
Introduction
A recent Federal statute, the Condominium and Cooperative Abuse Relief Act of 1980, 15 USC § 3601 et seq. (hereinafter cited as the Condominium Act), enables cooperative or condominium unit owners to terminate certain contracts entered into between the cooperative or condominium corporation and the sponsor. Typical of such arrangements — often called "sweetheart deals” — is the long-term lease with successive automatic renewal rights granted to the sponsor at favorable *243 rates. These leases become a burdensome economic charge against the purchasers of co-op shares or condominium units, as the case may be. In the context of the plaintiffs request for injunctive relief, this court shall examine a contract allegedly of this sort against the strictures of the Condominium Act.[1]
The plaintiff, 233 East 86th Street Corp., was the sponsor of the plan for the cooperative conversion of the premises located at 233 East 86th Street. Defendant, Park East, is the cooperative corporation. There is a factual dispute regarding the degree of renovation or reconstruction which preceded the cooperative offering. Plaintiff alleges the premises is a new building constructed for the purpose of sale pursuant to the plan. Defendant notes the prior certificate of occupancy listed the building as a class B multiple dwelling including 14 furnished rooms. It contends the construction of the new building essentially converted a building previously used for residential rental purposes to a building intended as a residential cooperative.
The plan also noted that the sponsor, 233 East, would obtain a commercial lease for the street-level store premises for a five-year term at $5,000 per annum rent with nine 10-year renewal options. It would, therefore, have a right to lease the street level store for up to 95 years.
On September 20, 1983, the plaintiff, 233 East, declared the plan effective. Pursuant to the plan, title was conveyed to the defendant Park East on October 19, 1983. The commercial lease for the street level premises was also entered into on October 19, 1983. The lease provided for the right to sublet and assign the commercial premises. The officers and directors of Park East were at the time of the conveyance and the contract affiliated with 233 East, the sponsor.
On October 18, 1984, Park East and one of the tenant shareholders on behalf of himself and the other tenant shareholders commenced an action against 233 East, among other parties, for misrepresentation and breach of its obligations under the plan. 233 has sublet the street-level premises to *244 NYNEX. Subsequently, Ganbir — 233 East’s sole shareholder— applied for a mortgage from Citibank. Thereafter, on September 20, 1985, Park East notified 233 East that pursuant to the Condominium Act, its lease was terminated effective December 19, 1985. On October 22, 1985, Park East notified 233 East that in light of the termination notice, it refused to sign a nondisturbance agreement for the Citibank mortgage. On November 6, 1985, 233 East commenced this proceeding for a judicial determination that the lease is valid; for a declaration that purported termination of the lease is void; for injunctive relief; and for damages for malicious interference with a business relationship and abuse of process. Counsel for the respective parties have stipulated to extend the stay pending the determination of this motion.
STANDARD FOR INJUNCTIVE RELIEF
Initially the court must determine the appropriate injunctive standard. Plaintiff seeks an injunction to maintain the status quo and toll the termination notice based on the doctrine established in First Natl. Stores v Yellowstone Shopping Center (21 NY2d 630 [1968]). The "Yellowstone doctrine”, as it became known, allows injunctive relief in landlord-tenant matters without regard to the likelihood of success on the merits in order to protect a tenant’s leasehold (see, Post v 120 E. End Ave. Corp., 62 NY2d 19 [1984]; Herzfeld & Stern v Ironwood Realty Corp., 102 AD2d 737 [1st Dept 1984]). The Yellowstone doctrine recognizes the unique nature of the leasehold. It allows the tenant to cure his default under the lease without jeopardizing his rental lease. The Yellowstone injunction is not applicable where there is no right to cure (Podolsky v Hoffman, 82 AD2d 763 [1st Dept 1981]; Wuertz v Cowne, 65 AD2d 528 [1st Dept 1978]). Here, Park East, the cooperative corporation, seeks to terminate the lease as self-dealing pursuant to the Condominium Act. This defect is not capable of being cured and accordingly the court may not evaluate the request for injunctive relief based on the Yellowstone doctrine, the purpose of which is to permit a tenant to cure defects.
The appropriate standard is, therefore, the general standard for injunctive relief. This requires a showing of likelihood of success on the merits, a favorable balance of the equities and irreparable harm (Macmillan, Inc. v Cadillac Fairview Corp., 86 AD2d 15 [1st Dept 1982]). To determine the likelihood of *245 success on the merits, the court must examine the Condominium Act and analyze its impact on this case.
LIKELIHOOD OF SUCCESS ON THE MERITS
The statutory purposes include the minimization of the adverse impacts of condominium and cooperative conversions and the establishment of mechanisms to provide relief where abuses occur in an area Congress has determined is of national importance (15 USC § 3601). 15 USC § 3607 permits the unit owners to terminate various self-dealing contracts without penalty. The termination must occur within two years of the earlier of the dates when the developer loses control of the condominium or cooperative corporation or when the developer owns 25% or less of the units (15 USC § 3607 [b]). This termination must be with the votes of two thirds of the unit owners not owned or controlled by the developer (15 USC § 3607 [c]). In contrast to other provisions relating to unconscionable contracts,[2] the key element of this section is the unit owners’ ability to terminate certain contracts without the necessity of judicial action. It "provides a means by which the unit owners of a conversion project may terminate a long-term, self-dealing contractual arrangement without having to resort to judicial action” (Sen Rep No. 96-736, at 51, 96th Cong, 2d Sess [1980], reprinted in 1980 US Code Cong & Admin News 3506, 3558).
In this case, potential duration of the lease is 95 years. The cooperative corporation was controlled by the sponsor at the time the lease was executed. Accordingly, the court finds the defendant Park East legitimately invoked the termination provision of the Condominium Act.
The plaintiff raises as an additional ground for the statute’s inapplicability — that the premises in question is a totally new building. Defendant’s allegation that the prior building was used for residential rental purposes makes the nature of the transformation a factual question. As a remedial statute, the law should be interpreted broadly to give it effectiveness (Bay *246 Colony Condominium Owners Assn. v Origer, 586 F Supp 30 [ND Ill 1984]). The denial of coverage to reconstruction of an existing rental premises would tend to undermine this remedial purpose. At this stage, plaintiff has not carried its burden that there was a definitive break in the residential character of the premises prior to the reconstruction. Therefore, the court further holds that the statute is applicable and that the defendant is likely to prevail on the merits.
DUE PROCESS REQUIREMENTS
Plaintiff also raises due process objections to the constitutionality of the Condominium Act. These due process concerns relate to hearing requirements prior to deprivation of property. This statute is a socioeconomic regulation of the marketplace rather than the governmental benefit, entitlement, deprivation or other action to which procedural due process attaches (see, SHAD Alliance v Smith Haven Mall, 66 NY2d 496).
There is a very strong presumption that a congressional statute is constitutional (Usery v Turner Elkhorn Min. Co., 428 US 1 [1976]) and the court must not judge the act based on its wisdom or policy (Kahn v Shevin, 416 US 351 [1974]). The Condominium Act allows the unit owners to terminate long-term self-dealing contracts. It recognizes the reality in which a developer can contract with a cooperative corporation still under its control and burden it with obligations which will affect it and the unit owners after they gain control of the cooperative corporation. Congress also recognized that the contracts, although self-dealing, may be fair or of short enough duration not to be a major problem. Unit owners are thus given an option exercisable only against contracts of more than three years and which they must exercise quickly with a supermajority vote and providing 90 days’ notice. Essentially, these self-dealing contracts are made voidable under stringent circumstances to allow an arm’s length look at transactions. This regulation of private contracts is reasonably related to the legitimate congressional goals (see, Bay Colony Condominium Owners Assn. v Origer, supra). The court believes the plaintiff has not established its likelihood of success on the merits.
IRREPARABLE HARM
Plaintiff has also failed to demonstrate the irreparable *247 harm it will suffer if the preliminary injunction is denied. Its potential loss of income from the rental of the street-level store premises is compensable in dollars (Matter of Nelson, 110 AD2d 535 [1st Dept 1985]). If the plaintiff is required to rent additional premises for itself, this loss is compensable in dollars as well.
BALANCE OF THE EQUITIES
In light of the controlling position of the plaintiff, 233 East, at the time of the closing, and the contractual provisions for an unusually low rental figure ($5,000 per year), and an unusually long potential term (up to 95 years), the court finds that plaintiff has not shown a favorable balance of the equities.
CONCLUSION
The motion for a preliminary injunction is, therefore, denied and the stay is dissolved 10 days after service of a duly entered copy of this order.

. The court notes the recent decision, West 14th St. Commercial Corp. v 5 W. 14th Owners (— F Supp — [SDNY, Jan. 13, 1986, 85 Civ 5138 (WK)]). In that case, the court found the provision permitting termination inapplicable since the unit owners had an extensive history of negotiations involving the leasing rights retained by the developer. While, therefore, distinguishable from the case at bar, this court considers the precise purpose of this provision of the Condominium Act to eliminate the necessity for the unit owners to demonstrate the unconscionability of the retained leasing right.

. A related provision permits judicial review of certain long-term (21-year), presumptively unconscionable, leases (15 USC § 3608). Owing to congressional concern over its retroactive applicability, it is only applicable to leases entered into prior to June 4, 1975 (15 USC § 3608 [a] [6]; Sen Report No. 96-736, 96th Cong, 2d Sess [1980], reprinted in 1980 US Code Cong & Ad News 3506, 3559; H.R. Report No. 96-1420, at 168-169, 96th Cong, 2d Sess [1980], reprinted in 1980 US Code Cong & Ad News, at 37133714).