■ 2 Fifth Avenue Tenants Association et al., Appellants, v May-Carlton Associates et al., Respondents.—Order, Supreme Court, New York County (Beatrice Shainswit, J.), entered June 17, 1985, which denied plaintiffs' motion for a preliminary injunction, is affirmed, without costs. Nonpurchasing tenants who are eligible to purchase are granted an additional 30-day period from the date of this court's order to exercise their exclusive right to so purchase.

In this case, as in the companion case of *Phoenix Tenants Assn. v 6465 Realty Co.* (119 AD2d 427), the plaintiffs seek to enjoin the defendants' sponsor from closing a cooperative conversion plan on the grounds of certain deficiencies in the disclosures made in the offering statement.

The facts are thoroughly set forth in the dissent. We agree with Special Term and with the dissent that full disclosure has been made regarding the estimated maintenance costs and

the nature of the ground lease to be acquired by the apartment corporation.

We also agree with that part of Special Term's order which approved the fourth amendment to the offering plan, which contains the same disclosure regarding the Federal Condominium and Cooperative Protection and Abuse Relief Act of 1980 (15 USC § 3601 *et seq.)* as was ordered in the *Phoenix* action *(supra).* For the same reasons as stated in our memorandum in *Phoenix,* we affirm the order of Special Term. Concur—Sandler, J. P., Ross and Ellerin, JJ.

Asch, J., dissents in a memorandum as follows: The issue which this appeal presents is, as in the companion case, whether the Federal Condominium and Cooperative Abuse Relief Act of 1980 ([Act], 15 USC § 3601 *et seq.)* applies to cooperative plans in which the ground leases are assigned to affiliates of the offeror. I conclude that the clear language of the statute covers the ground lease herein. Hence, I disagree with the majority and dissent.

On or about June 13, 1984, the Attorney-General accepted for filing, pursuant to General Business Law § 352-e *et seq.,* the offering plan for the conversion of the premises at 2 Fifth Avenue, New York City, to cooperative ownership. Thereafter, the Attorney-General also accepted for filing a first, second and third amendment to the offering plan on October 5, 1984, January 15, 1985 and January 22, 1985, respectively.

On or about February 26, 1985, the Attorney-General accepted for filing a fourth amendment, in which the sponsor disclosed the existence of the Federal Condominium and Cooperative Abuse Relief Act of 1980 (15 USC § 3601 *et seq.)* and specifically set forth the terms and conditions contained in the statute for terminating certain contracts between a cooperative and a sponsor or an affiliate of the sponsor.

Plaintiffs seek, *inter alia,* broad preliminary and injunctive relief against the private defendants. They allege that there exist certain defects in the offering plan to convert 2 Fifth Avenue, New York City, to cooperative ownership, namely:

"Defendant May-Carlton Associates, the Sponsor, allegedly concealed and misrepresented that less than 14% of the estimated maintenance charges for the apartments will be deductible for income tax purposes, although the usual percentage of maintenance charges deductible for cooperative apartments in New York City allegedly ranges from 40% to 60%;

"the Sponsor failed to make disclosures about the ground lease; and

"the Sponsor failed to disclose that the garage lease and the commercial lease which are to be in effect between the Sponsor (or Sponsor-affiliates) and the cooperative are terminable by the apartment corporation pursuant to the Federal statute."

The contract of sale between 2 Fifth Avenue Co., as seller, and Square-Arch Realty Corp., as purchaser, provides that the sale of the building is "subject to" leases of all tenants in the building in force on the closing date, including the garage lease between 2 Fifth Avenue Co. and Residence Garage Corp. This garage lease, which was last modified on April 1, 1983, expires on August 31, 1995, and has 14 successive 10-year options to renew. Annual rent under the garage lease is $25,000 and the lease contains tax-escalation provisions which are applicable until the third full calendar year that the cooperative corporation shall have owned the building, after which there are provisions for annual rent increases.

Under the terms of the lease, the cooperative corporation must provide services to the garage. The offering plan does not state the income currently derived by the tenant from the garage but does say that "the principals of the Owner and, accordingly, of the Sponsor, may derive substantial profits from the operating or subletting of the garage". The garage has room for 160 cars.

I agree that Special Term had ample basis to find that full disclosure has been made regarding the estimated maintenance costs and the nature of the ground lease to be acquired by the cooperative corporation.

In 1980, Congress passed the Condominium and Cooperative Abuse Relief Act. (15 USC § 3601 *et seq.*) The purpose of the Act, as stated by Congress, is "to assure fair and equitable principles are followed in the establishment of condominium and cooperative opportunities". (15 USC § 3601 [b].) The Act applies to cooperatives containing five or more units where an interest was offered for sale through the mails. (15 USC § 3601 *et seq.*) Finally, the Act provides for concurrent jurisdiction in both the State and Federal courts to enforce its provisions. (15 USC § 3612.)

By their express language, the garage and commercial leases cannot be canceled by the cooperative. If the plan is subject to the Act, however, then the right to terminate the leases by the independent board arises from the Federal Act even in contravention of the lease terms. A prospective purchaser who believes that the cooperative corporation will not

receive sufficient rent under this sweetheart garage and commercial lease might be discouraged from buying unless he is informed that the Federal statute will permit the cooperative corporation to cancel the existing sweetheart leases. Even those who decide to purchase might use the better bargaining positions which the Federal law affords to negotiate a better deal for the tenants before committing themselves to purchase. The sponsor's omission in the offering plan of such a critical right granted by Congress to the cooperative to terminate those leases deprived the tenants of that important information and bargaining leverage.

Special Term denied plaintiffs' request for a declaration that the Federal Act applies to the garage and commercial store leases (and that such leases are subject to cancellation after the control of the cooperative is transferred from the sponsor to the tenant-shareholders) as premature.

The fourth amendment to the offering plan describes the existence and relevant provisions of the Condominium and Cooperative Abuse Relief Act of 1980 (15 USC § 3601 *et seq.)* and advises the prospective purchaser that "the Department of Law has advised the Sponsor that the provisions of Section 608 (15 USC § 3607) may possibly apply to the Commercial Leases described in the Plan". However, the plan also states that the "Sponsor disagrees strongly with this position, and in no way concedes the applicability of Section 608 to the Commercial Leases".

As noted, Special Term found this to be sufficient disclosure. It is, however, inadequate for a lay purchaser. To make sense to a prospective purchaser, the fourth amendment should disclose that the garage and commercial leases are terminable by the shareholders in accordance with the terms of the Federal statute. A determination by this court regarding the applicability of the Federal statute to this master lease would permit the public to evaluate the economic consequences of the termination of the leases by an independent board of the cooperative, after closing.

Fortunately for the public in the State of New York, the Federal and State laws may be read and applied together for better protection against long-term sweetheart leases, such as these leases.

Ample basis exists in the legislative history of the Federal statute for this court to conclude that the application of the Federal statute to the garage and commercial leases here is appropriate. *(See also, West 14th St. Commercial Corp. v 5 W. 14th Owners Corp.,* 625 F Supp 934 [SDNY 1986, Knapp, J.].)

As demonstrated by the Congressional findings and purpose contained in 15 USC § 3601 (a), Congress intended that: "(3) certain long-term leasing arrangements for recreation *and other condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects* may be unconscionable; in certain situations State governments are unable to provide appropriate relief; as a result of these leases, economic and social hardships may have been imposed upon cooperative and condominium owners, which may threaten the continued use and acceptability of these forms of ownership and interfere with the interstate sale of cooperatives and condominiums; appropriate relief from these abuses requires Federal action" (emphasis added).

Congress took special effort to add "and other condominium- or cooperative-related facilities". Similarly, at section 3607 (a) (1), the Act allows a cooperative association to terminate, without penalty, only those contracts, or any portion thereof, which provide "for operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of *property serving the condominium or cooperative unit owners in such project*" (emphasis added).

The garage and commercial leases for 2 Fifth Avenue fall within the Federal definition despite the sponsor's assertions that the Federal statute has no relevance or applicability to them. There is a close connection between the garage and commercial leases (for the operation and maintenance of garage space and the commercial areas within the premises) and the Federal definition of "cooperative-related facilities" and of "property serving the condominium or cooperative unit owners in such project".

Enclosed garage space within a residential building is a valuable asset in the Borough of Manhattan which undeniably serves the cooperative and which is an essential accoutrement of urban living.

The provisions of the commercial lease concerning retail stores, which do not offer the same convenience and necessity as a garage, nevertheless relate directly to the ease, comfort and economy of the cooperative shareholders. Thus, the garage lease (and to a lesser extent the commercial leases) serves the cooperative and is within the purview of the Federal statute.

For the foregoing reasons, this court should modify the order appealed from by declaring that the Condominium and Cooperative Abuse Relief Act of 1980 (15 USC § 3601 *et seq.)*

applies to garage and commercial leases at 2 Fifth Avenue, and requiring the sponsor defendants to file an amendment to the offering plan disclosing that the leases are terminable pursuant to the Federal statute, and granting a reasonable period of time for nonpurchasers to subscribe and for subscribers or purchasers to rescind their subscription agreements or their completed purchase.