OPINION OF THE COURT
Lewis R. Friedman, J.
This case requires that a State court interpret a Federal statute despite what the Federal courts in this circuit have done. The statute in question impacts on an area of law which is, and traditionally has been, the bailiwick of the States: regulation of real property is a classic area of local control and legislation. The Condominium and Cooperative Abuse Relief Act of 1980 (15 USC §§ 3601-3616) (the Act) was adopted to afford limited protection to owners of cooperatives and condominiums from certain abusive practices engaged in by unscrupulous developers. The central issue in this case is whether, under the Act, the long-term lease of commercial store space by a developer to itself prior to the sale of the individual units in a cooperative apartment building may be set aside by residential tenant-cooperators after they gain control of the building.
PROCEDURAL HISTORY OF THIS PROCEEDING
In accordance with an offering plan filed with the Attorney-General of the State of New York, the property was conveyed by the developer, 233 East 86th Street Corporation (the Tenant), to the petitioner here, a corporation formed for the purpose of cooperative ownership. At the closing, petitioner, under the developer’s complete control, executed a lease for the store-front space in the building with Tenant, the respondent here (the Lease). The Lease permits any lawful use, allows subleasing, and assignment, and provides for an annual rental of $5,000, with increases only for increased costs of certain building expenses, for the life of the Lease; if all the renewal options are exercised, the Lease will ultimately expire in 2078, after 95 years. The store space is currently subleased to the respondent undertenant for $60,000; the rent will increase to $75,000 per year. The offering plan accurately described the 95-year Lease and the potential application of the Act.
*809 Within two years of the original closing, the shareholders of petitioner, in conformity with the procedures under the Act, voted to terminate the Lease. The votes in favor were more than two thirds of the units other than those owned by the sponsor. On September 20, 1985 petitioner served a notice to terminate the Lease effective November 19, 1985. Respondents unsuccessfully sought injunctive relief (233 E. 86th St. Corp. v Park E. Apts., 131 Misc 2d 242). Supreme Court found plaintiff tenant had not shown that there was a likelihood of success on the merits, irreparable harm, or a favorable balance of the equities; the court concluded that an injunction should not issue. On appeal the Appellate Division, First Department, affirmed, without opinion, but noted: "[w]e need not reach the question of the applicability of the statute (Condominium and Cooperative Abuse Relief Act of 1980 [15 USC § 3601 et seq.].)” (123 AD2d 536.)
Petitioner then commenced the instant holdover proceeding. Respondents moved to dismiss for failure to state a cause of action; that motion was granted on petitioner’s default. The instant motion originally sought to vacate that default. The court advised the parties that the issues were sufficiently important that the minor default should not stand. The parties were advised that the court would determine the merits of the motion and that it might treat the extensive affidavits submitted as though this were a motion for summary judgment (CPLR 3212 [c]). The parties submitted additional papers. *
As a threshold matter, petitioner argues that this court is bound by Supreme Court’s conclusion, in deciding the motion for a preliminary injunction, that respondents are not likely to succeed on the merits; therefore, it contends that the motion to dismiss should be denied without plenary consideration. The law in New York is settled that denial of a motion for a preliminary injunction has no effect on the merits of a case. The decision does not "constitute the law of the case or an adjudication on the merits”; also, it does not act as collateral estoppel or res judicata in a subsequent action (Walker Mem. Baptist Church v Saunders, 285 NY 462, 474; Ratner v Fountains Clove Rd. Apts., 118 AD2d 843; Ryger v Segal, 129 Misc 2d 763, 764). That result is particularly appropriate here. The Appellate Division specifically expressed reservation as to the application of the Act to this case. It would be erroneous to give conclusive effect to Supreme Court’s dictum that respondent had no likelihood of success on the merits, which *810 relies on its conclusion that the Act applies, where the premise has been disavowed on appeal. Simply put, the conclusion by Supreme Court that the equities did not require that this proceeding be enjoined, which is all that was affirmed, does not preclude this court from determining the merits of the present motion. In any event, the decision in West 14th St. Commercial Corp. v 5 W. 14th Owners Corp. (815 F2d 188 [2d Cir 1987], cert denied — US —, 98 L Ed 151), after the decisions in the injunction case, warrants this court’s consideration of the merits.
THE PROVISIONS OF THE ACT
Congress found that in conversions of property to cooperative and condominium forms of ownership "certain long-term leasing arrangements for recreation and other condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects may be unconscionable” (15 USC § 3601 [a] [3]); the Act was adopted "to assure [that] fair and equitable principles are followed in the establishment of condominium and cooperative opportunities, and to provide appropriate relief where long-term leases of recreation and other cooperative- and condominium-related facilities are determined to be unconscionable” (15 USC § 3601 [b]). Concern over abuses in the conversion process convinced Congress, after extensive hearings, to exercise its Commerce Clause power to legislate in an area of local concern on the grounds that conversions affect the national housing market (Bay Colony Condominium Owners Assn. v Origer, 586 F Supp 30, 32-33 [ND Ill 1984]; cf., Hodel v Virginia Surface Min. & Reclamation Assn., 452 US 264, 276 [1981]; National League of Cities v Usery, 426 US 833, 840 [1976]). The scheme adopted in the Act was a compromise between the Senate, which sought an extensive Federal presence and substantive regulation, and the House, which favored no regulation at all.
Two interrelated sections (15 USC §§ 3608, 3607) govern self-dealing contracts and leases which may be terminated by the purchasers when they gain control of a cooperative or condominium development. Although the sections have been discussed in the Supreme Court injunction action and the Second Circuit decision in West 14th St. Commercial Corp. v 5 W. 14th Owners Corp. (supra), neither case adequately investigated their legislative history. A description of each of those sections is required to put them in context.
*811 In section 3608 (a) Congress declared that certain long-term "leases” of property to a cooperative or condominium might be found' to be "unconscionable at the time they were made.” A "lease” is defined in the Act: " '[L]ease’ includes any agreement * * * containing a condominium or cooperative unit owner’s obligation,, individually, collectively, or through an association to make payments for a leasehold interest or for other rights to use or possess real estate, or personal property (which rights may include the right to receive services with respect to such real estate or personal property)”. (15 USC § 3603 [16].) Thus the section applies only to leases of real or personal property to the cooperative or condominium. The court, on the application of the unit owners, determines the invalidity of a lease which meets certain criteria, including that it was made when the developer controlled the project, was for more than 21 years, contains an automatic rent increase clause, and "was entered into prior to June 4, 1975” (15 USC § 3608 [a] [6]). The section provides for a presumption of unconscionability, if certain elements, such as excessive rents and automatic rent increases, are present. The court can, however, consider contrary evidence and grant appropriate remedial relief including rescission, reformation, restitution and damages (15 USC § 3608 [c],*[d]).
The history of section 3608 shows the problems it was to address. The administration had drafted legislative proposals for cooperative and condominium reform in 1979. The primary bill was S. 612. Section 3608 was proposed, in essentially its current form, as an amendment (amend 114) to S. 612 offered in 1979 by Florida Senators Stone and Chiles based on problems in Florida (see, remarks of Sen Williams, Chair of Senate Subcomm, 126 Cong Rec 4230 [daily ed, Feb. 28, 1980]; see also, remarks of Sen Williams, 126 Cong Rec 28173 et seq. [daily ed, Sept. 30, 1980]; cf., Point E. Mgt. Corp. v Point E. One Condominium Corp., 282 So 2d 628 [Fla 1973]; Wechsler v Goldman, 214 So 2d 741, 744 [Fla App 1968]). In the bill adopted by the Senate (S. 2719), the section (then § 510 of the bill) was both retroactive and prospective in operation and included provisions precluding enforcement of automatic increase clauses in certain leases. "This section is addressed to the long-standing controversy, primarily centered within the State of Florida, concerning escalating long-term leasing arrangements for recreational or other facilities which had to be accepted as a condition of purchasing a unit.” (See, S Rep No. 96-736, 96th Cong, 2d Sess, 51-52, 77-78, reprinted in 1980 US *812 Code Cong & Admin News 3506, 3558-3559, 3584-3585.) The conference report, on the bill which became Public Law 96-399, makes it clear that the House objections to excessive Federal regulation in an area of State concern resulted in a major reduction in the applicability of section 3608. Provisions such as those barring automatic rent increases were deleted and the "unconscionability” provision was limited to leases entered into before June 4, 1975, the effective date of Florida’s comprehensive condominium act. The professed purpose of the section as reported by the conference committee was to attempt to overcome the constitutional inability of Florida to permit termination of leases entered before its regulatory statute was effective (HR Conf Rep No. 96-1420, 96 Cong, 2d Sess, 168-172, reprinted in 1980 US Code Cong & Admin News 3617, 3713-3717; see, remarks of Rep Ashley, Chair of House Subcomm, 126 Cong Rec 28443 et seq. [daily ed, Sept. 30, 1980]; remarks of Sen Williams, 126 Cong Rec 28173 et seq. [daily ed, Sept. 30, 1980]).
- Section 3608’s carefully drawn limitations do not appear in section 3607. Section 3607 (a) permits the unit owners to terminate, without court order,
"[a]ny contract or portion thereof which is entered into after the effective date of this title [* * * October 8, 1980], and which—
"(1) provides for operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of property serving the condominium or cooperative unit owners in such project”.
The contract must meet certain other criteria such as exceeding three years and be between the developer and the association of unit owners; procedurally, termination requires the vote of two thirds of the unit owners other than the developer and must occur within two years of the unit owners gaining a specified form of control of the project (15 USC § 3607 [a], [b], [c]). The Senate committee report contains a single sentence describing the meaning of what was then-section 509 of S. 2719: "Section 509 provides a means by which the unit owners of a conversion project may terminate a long-term, self-dealing contractual arrangement without having to resort to judicial action” (see, S Rep No. 96-736, 96th Cong, 2d Sess, 51, 77, reprinted in 1980 US Code Cong & Admin News 3506, 3558, 3584). The only substantive change adopted by the conference was to lengthen the threshold *813 period of the contract to three years from the two in the Senate version (see, HR Conf Rep No. 96-1420, 96 Cong, 2d Sess, 168, reprinted in 1980 US Code Cong & Admin News 3617, 3713). Representative Ashley noted during the floor debate of the conference report that most of the Senate’s efforts to nationalize the cooperative and condominium conversion process had been eliminated. "The conference report narrowly addresses only the most egregious problems. It provides a process for condominium and cooperative unit owners to terminate self-dealing contracts with developers who, after the date of enactment, converted multifamily rental buildings into condominium or cooperative projects” (126 Cong Rec 28444 [daily ed, Sept. 30, 1980]). Indeed, Senator Williams lamented the loss of an opportunity to nationalize tenant rights in the conversion process (36 Cong Rec 28178 [daily ed, Sept. 30, 1980]).
THE APPLICATION OF THE ACT
The case presents several issues concerning the application of section 3607 of the Act to the Lease. Respondents contend (1) that this is not a "conversion project”, (2) that leases of cooperative property are not "contracts” covered by section 3607, and (3) that the store space is not "property serving the cooperative or condominium owners in such project”. The court will discuss each of those issues.

Conversion Project

As a threshold question respondents contend that the building is not a "conversion project”. A "conversion project” is defined as "a project, which has five or more residential units, which was used primarily for residential rental purposes immediately prior to being converted to a condominium or cooperative project”. (15 USC § 3603 [7].)
Respondents’ affidavits show that the building on the site had been completely demolished and a new residential building constructed; thus, they contend that this building is "new construction.” Petitioner asserts that "the most recent certificate of occupancy on record for the premises, prior to the construction of the present building by the Sponsor, lists the building as a Class B multiple dwelling * * * including 14 furnished rooms on the second and third floors”.
Without question the Act is limited to "conversion projects”. The language of section 3607 (a) (1) is unequivocal. *814 So is the legislative history. The original proposal for the Act, S. 612, applied to conversions and new construction. The Senate specifically rejected that view in passing S. 2719. "While it is apparent that newly constructed multifamily homeownership opportunities, particularly condominiums, will form an increasingly larger proportion of the Nation’s housing stock, the Committee does not feel that Federal legislation in this area, except on the subject of long-term escalating leasing arrangements for project-related facilities, is presently necessary or appropriate * * * And, of course, general coverage of projects originally built as condominiums or cooperatives was rejected, and Title V is almost entirely restricted in its scope to the conversion of rental properties” (S Rep No. 96-736, 96th Cong, 2d Sess, 49, reprinted in 1980 US Code Cong & Admin News 3506, 3556). Indeed, the original' title of the Act was "Condominium and Cooperative Conversion Protection and Abuse Relief Act of 1980”. Both the language of the law and its history reject petitioner’s contention that coverage of "new” projects was intended.
The question is whether this case involves a "conversion” within the meaning of the statute. The change of the definition of "conversion project” in the drafting process shows the intent of Congress. The bill originally adopted by the Senate (S. 2719), at section 503 (29), defined a "conversion project” as one that "at any time before the first conveyance of a unit to a purchaser, [was] wholly or partially occupied by persons other than purchasers and persons who occupy with the consent of purchasers.” The conference report clearly accepted the Senate limitations of the law to "conversions” and imposed still further restrictions including a redefinition of a "conversion project” to require residential use "immediately prior” to conversion (see, HR Conf Rep No. 96-1420, 96 Cong, 2d Sess, 162-164, reprinted in 1980 US Code Cong & Admin News 3617, 3707-3709). Petitioner offers no proof that "immediately prior” to its purchase of the building there were any residential occupants. Thus, while this building would have been a "conversion” under the Senate bill, it is not under the statute actually enacted.
Petitioner argues that the conclusion by the court in the injunction proceeding that there were triable issues of fact as to whether this is a "conversion project” requires this court to order a trial of that issue. Supreme Court’s opinion did not examine the history of section 3607, apply it to this case or even discuss the Act’s definition of "conversion project” (233 *815 E. 86th St. Corp. v Park E. Apts., 131 Misc 2d, supra, at 245-246). As noted above, this court is not required to follow that dictum. There is no doubt that this is not a "conversion project”. The court must, however, consider the other issues raised, since they present alternative rationales for the court’s conclusion that section 3607 does not apply; they do not involve disputes as to whether a trial of the facts is required.

Contract

THE STATUTORY LANGUAGE
Respondents contend that since section 3607 applies only to "contracts” it does not apply to "leases” of cooperative property. There is no doubt that section 3607 .uses the term "contract” and not "lease”. The term "contract” is not defined anywhere in the statute or the legislative history. It is well established that a lease is both a conveyance of an interest in the realty and a contract. (Restatement [Second], Property [Landlord & Tenant] ch 1; 49 Am Jur 2d, Landlord and Tenant, § 1; Lesar, The Landlord-Tenant Relation in Perspective: From Status to Contract and Back in 900 Years?, 9 U of Kan L Rev 369, 377 [1961]; Corbin, Contracts, at 686 [1951].) The question, however, is what Congress intended in the use of the term "contract” in section 3607. It appears clear from the thrust and history of the Act that it was not Congress’ intent to have section 3607 apply to self-dealing leases of cooperative property.
The Act was patterned in large part on Florida’s statute applicable to cooperative and condominiums. Section 3607 is nearly identical to Florida Statutes Annotated § 719.302 (1). The only difference is that Florida specifically precluded self-dealing in "[a]ny grant or reservation made by a cooperative document, lease, or other document, and any contract’’. Thus, presumably, Congress made a conscious choice to exclude "leases” from the coverage of section 3607.
The inclusion of any form of leases within section 3607 is inconsistent with the enactment of section 3608. The interpretation of the term "contract” in section 3607 to include a "lease” would, of course, include leases of property to the cooperative from the sponsor as well as leases, such as the one at bar, by the cooperative to the sponsor. But obviously, that broad application would effectively negate all of the carefully drawn provisions in section 3608. If all a cooperative had to do to terminate a lease without a court proceeding was to .follow *816 the procedures of section 3607, the detailed factors to be considered and the other safeguards in section 3608 were unnecessary. Also, since Congress had unequivocally provided that section 3608 would only apply to leases to a cooperative adopted before 1975 and would have no prospective application (see, supra, at 811-812), it is inconceivable that it would have, without any discussion in the committee reports or on the floor of either House, allowed prospective, wholesale, unilateral cancellation of leases of property to a cooperative. Every prospective lease of recreational space to a condominium would have been terminable; yet, that possibility was specifically rejected. Thus, the conclusion is inescapable that the Act does not permit a lease of property to the condominium to be canceled under section 3607.
Moreover, nothing in the language or history of the Act permits the conclusion that section 3607 can be harmonized with section 3608 by applying the term "contract” only to "leases” by the cooperative to the sponsor. A careful review of the Senate hearings, the Senate and conference reports, and the floor debates in both Houses reveals that there was no discussion at all of problems of "self-dealing” leases of cooperative property to the sponsor. The problems addressed included the long-term recreational lease of property to a cooperative or condominium, without which the project was not viable; long-term leases of property with automatic rent escalation clauses, which affected the economic viability of the project; long-term management agreements; and long-term contracts to operate project properties. The economic benefits which might accrue to the cooperators or condominium owners from additional income generated by the rental of parts of the project were, simply, not of congressional concern when it adopted the Act. Thus, to apply the Act to leases of common property to the sponsor is not consistent with the thrust of the Act.
THE FEDERAL COURT’S ANALYSIS
Petitioners argue that since the United States Court of Appeals for this circuit has already concluded that the term "contract” in section 3607 includes leases of property by the cooperative to the sponsor (West 14th St. Commercial Corp. v 5 W. 14th Owners Corp., supra) this court is bound to follow that interpretation. The Act specifically provided that cases under it could be brought in State or Federal courts (15 USC § 3612), *817 reflecting congressional awareness of alternate State and Federal interpretations. The well-accepted rule in this State is that State courts are not bound to follow the construction of a Federal statute made by any Federal court other than the Supreme Court of the United States (People ex rel. Ray v Martin, 294 NY 61, 73, affd 326 US 496; Cooper v Morin, 91 Misc 2d 302, 317; see, Comment, The State Courts and The Federal Common Law, 27 Albany L Rev 73, 77-78 [1963]). State courts do, however, give "due and great respect to such holdings” (Myer v Shields & Co., 25 AD2d 126, 128; cf., Matter of Fermaglich [Levine], 41 AD2d 70, 76). Here, however, the court cannot follow the conclusion of the Second Circuit for an analysis of its reasoning shows it to be flawed and based on an erroneous reading of the legislative history.
The Second Circuit has four bases for its conclusion that the term "contract” in section 3607 includes leases of property by the cooperative: the definition of "lease” in section 3603 applies only to leases to the cooperative; the legislative history shows that leases were intended to be included; drawing a line between "leases” and "contracts” would exalt form over substance; and exclusion of leases would thwart congressional purposes (815 F2d, at 197-198, supra). None of these grounds withstands scrutiny.
The Second Circuit concluded that the definition of "lease” as only applying to leases to the cooperative does not preclude the application of section 3607 to leases by the cooperative. The circuit cites no authority to support that distinction. This court’s research into the language and history of the Act found no such authority.
The most troubling part of the Federal court’s analysis is its reference to the legislative history. The court referred to Senator Williams’ floor statement in support of the conference report as supporting its conclusion. The statement, which is the only floor discussion of section 3607, in its entirety was: "Finally, I am pleased to note that the conferees did retain a provision of the Senate bill which provides a federally-sanctioned, simple and nonjudicial method by which the residents of a conversion project may void a long-term, self-dealing leasing arrangement.” (126 Cong Rec 28178 [daily ed, Sept. 30, 1980].) At the outset it is not certain that the term "leasing” was even intended by the Senator, since he did not refer at all to management "contracts” which were, without doubt, the central thrust of section 3607. Further, Senator Williams’ following remarks, apparently about section 3608, show his, *818 and the other Senate conferees’, great concern about abuses in self-dealing leases and their inability to get House support for anything other than limited relief for the Florida situation: "[i]t would also have been prudent to provide prospective as well as retroactive relief in situations involving unconscionable leasing arrangements” (126 Cong Rec 28179 [daily ed, Sept. 30, 1980]). Those remarks are inconsistent with a view that the bill provided for terminations of any leases without judicial scrutiny.
The Federal court also relied on certain sections of the Senate Report on S. 2719. The reference to the Additional Views of Senators Garn, Lugar, Tower and Armstrong (S Rep No. 96-736, 96th Cong, 2d Sess, 95, reprinted in 1980 US Code Cong & Admin News 3506, 3600) is in error. The remarks were generally opposed to the committee’s proposal to impose Federal substantive rights in conversion projects: "We strongly believe that federal law is inappropriate and is unnecessary to regulate what is fundamentally a local issue. We stand with the position of two past Congresses in refusing to legislate a national condominium conversion statute”. (Ibid.) The Additional Views then discussed section 510, the predecessor of section 3608, to which its author is subscribed. However, they strongly objected to section 510 (e), which provided that "[notwithstanding the provisions of subsections (a) through (d) of this section, exercise of any automatic rent increase clause shall be unenforceable against cooperative or condominium owners”. The four Senators took issue with the "provision to halt further escalation in recreation leases. This provision operates without the need to come to court, without judicial consideration, and without the opportunity for opposing interests to demonstrate that circumstances dictate a different remedy.” (Id., at 3600-3601.) They were discussing a section of the bill which was rejected by the conference; they were not even referring to the predecessor of section 3607, as the circuit’s citation suggests.
The Federal court’s conclusion that the distinction between leases and contracts exalts form over substance and thwarts the congressional purpose assumes that the purpose was to preclude the self-dealing of sponsors with the cooperative. As previously noted (supra, at 815-816), there is nothing in the legislative history to support such a conclusion or that it was even considered. There is no doubt that a cooperative or condominium conversion is a complex project involving legal decisions as to the form of the project and the subsidiary *819 rights involved. Congress did not seek to regulate all of these issues. It is clear that if the sponsor were to create a condominium and retain a fee rather than a leasehold interest in the store, laundry or garage space, the remaining part of the project, whether a cooperative or condominium, would have no claim under the Act; there would be no "lease” or "contract” to terminate. Thus the form of the transaction will produce different results even under the Federal court’s analysis. While the circuit is correct that "a lease, in substance, may be nothing more than a contract of operation” (815 F2d, at 198, supra), the court should reserve for subsequent consideration the question of interpretation presented by such a document. A lease of commercial store space does not present the issue.
In short, the Federal court concluded that the Act applied to leases by the cooperative based on a flawed analysis of the question. The decision will not be followed.

Property Serving the Unit-Owners

Section 3607 (a) (1) permits the termination of "contracts” for the "operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of property serving the condominium or cooperative unit owners in such project”. It is contended by petitioner here that the lease at issue involves "property serving” the project.
The term '.'property serving” the project is not defined in the Act. Therefore, the court should give the words their plain meaning: providing services to the project. The Federal court in interpreting section 3607 rejected the owner’s argument .that the term applied only to property "exclusively” serving the project and applied, instead, a test of whether the property "primarily” served the project. (West 14th St. Commercial Corp. v 5 W. 14th Owners Corp., 815 F2d, at 198-199, supra.) That interpretation is reasonable and is supported by the legislative history. There was no congressional intent to regulate property that was not directly involved, in a cooperative project.
The court concludes that the Federal court correctly found that "[c]ommercial stores, on the other hand, are primarily for the benefit of the public”. (815 F2d, supra, at 199.) Without doubt the availability of commercial stores may "relate directly to the ease, comfort and economy of the cooperative shareholders”, although to a lesser extent than do garages and laundry rooms (Phoenix Tenants Assn. v 6465 Realty Co., 119
*820 AD2d 427, 434-435 [Asch, J., dissenting]). Yet, there is no showing that Congress intended to reach those properties (see, Condominium Housing Issues: Hearings on S. 612 Before Subcomm on Hous and Urban Affairs, 96 Cong, 1st Sess, 582 [statement of Jay Janis, Under-Secretary, Dept of Hous & Urban Dev (1979)]). The terms relied on by Justice Asch, "condominium- or cooperative-related facilities which have been used in the formation of cooperative and condominium projects” which are used in section 3601 (a) (3), relate to the provisions of section 3608 and not to the much narrower terms in section 3607.
There is no reason to apply the Act to store space on a busy Manhattan street. Without doubt, a first-floor store opening on a commercial part of East 86th Street in Manhattan does not serve the property, but the community-at-large. Petitioner argues that the Lease differs from the store lease in West 14th St. Commercial Corp. v 5 W. 14th Owners Corp. (supra), since the use here is not limited to "sales to the public” or "for retail space and services compatible with similarly situated cooperative apartment buildings”. The permitted use here, "any lawful purpose,” does not change the essential characteristic of the space — a retail store on a busy commercial street. This lease is not for the only grocery in an isolated residential community (see, United Hous. Found, v Forman, 421 US 837, 857-858). There is a no doubt that Congress did not attempt to legislate the invalidation of this type of lease.
CONCLUSION
Congress intended to make an impact on the cooperative conversion process, even though it is a matter of State concern. The Senate effort to regulate affirmatively was rejected; the House would not agree. This court cannot rewrite the Act to permit it to cover that which was excluded. In this State a developer must make full disclosure of the details of "self-dealing” and other leases so that purchasers may make informed decisions as to whether to purchase a cooperative or condominium (Phoenix Tenants Assn. v 6465 Realty Co., 119 AD2d, at 430-431, supra; 2 Fifth Ave. Tenants Assn. v May-Carlton Assoes., 119 AD2d 436). Congress permits the termination by the cooperative of only certain contracts. New York has not adopted a statute to expand that coverage to the circumstances here. The parties to a conversion may negotiate and make appropriate adjustments in the price. Disclosure *821 under the General Business Law permits a fair accommodation of the parties’ interests. The courts should not create a remedy where the problem may well have been resolved by negotiation. Unilateral terminations of contracts with the sponsor, after the price for the project has been agreed upon, should be restricted to instances where the Legislature has acted to correct abuses.
The motion to vacate the default is granted. The motion to dismiss for failure to state a cause of action is granted.