CROMWELL ASSOCIATES, Plaintiff,

v.

OLIVER CROMWELL OWNERS, INC., Defendant,

12 West 72nd Street Corp., Additional Counterclaim Defendant.

No. 87 Civ. 784 (JMC).

United States District Court, S.D. New York.

July 12, 1988.

Stroock & Stroock & Lavan, New York City by Robert J. Zastrow, for plaintiff.

Kurzman Karelsen & Frank, New York City by Marianne Acito, for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Plaintiff's motion for partial summary judgment is granted. Defendant's cross-motion for summary judgment is denied. Fed.R.Civ.P. 56.

## BACKGROUND

This case involves a dispute stemming from the conversion of a former apartment hotel into a cooperative. The building, located at 12 West 72nd Street in Manhattan, was converted to cooperative ownership, pursuant to a non-eviction plan, on June 22, 1984. The sponsor of the conversion was Oliver Cromwell Holdings Co. Also on June 22, 1984, defendant Oliver Cromwell Owners, Inc. ["the Cooperative"], as landlord, and 12 West 72nd Street Corp. ["12 West Corp."], as tenant, executed a Master Commercial Lease [the "Master Lease"] covering certain areas located on the premises. 12 West Corp. is an affiliate of the sponsor. The Master Lease contains various subleases covering (1) a pharmacy; (2) a suite of doctors' offices; (3) a seafood restaurant called Sidewalker's, which specializes in boiled crabs; (4) certain storage areas; (5) a laundry room; (6) a series of maids' closets; and (7) an office located on the main floor of the building. The storage area, laundry room, and maids' closets apparently are used to service the needs of rent-stabilized tenants who chose not to purchase shares of the Cooperative following conversion. In December 1986, 12 West Corp. assigned the lease to plaintiff Cromwell Associates.

On February 2, 1987, the Cooperative served notice that, pursuant to provisions of the Condominium and Cooperative Abuse Relief Act of 1980, it had elected, by a vote of more than two-thirds of the units other than units owned by the developer or an affiliate of the developer, to terminate the Master Lease. Plaintiff commenced this lawsuit challenging the validity of the termination and seeking additional relief. Plaintiff now moves for partial summary judgment with respect to its claim that the notice of termination was invalid and to the Cooperative's first counterclaim asserting that the termination was valid. The Cooperative cross-moves for summary judgment.

## DISCUSSION

■ The disposition of these motions is governed by § 3607(a) of the Condominium and Cooperative Abuse Relief Act, 15 U.S.C. §§ 3601–3616 [the "Act"]. Section 3607(a) provides in pertinent part:

> Operation, maintenance, and management contracts; penalty
>
> (a) Any contract or portion thereof which is entered into after October 8, 1980, and which—
>
> (1) provides for operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of property serving the condominium or cooperative unit owners in such project;
>
> (2) is between such unit owners or such association and the developer or an affiliate of the developer;
>
> (3) was entered into while such association was controlled by the developer through special developer control or because the developer held a majority of the votes in such association; and
>
> (4) is for a period of more than three years, including any automatic renewal provisions which are exercisable at the sole option of the developer or an affiliate of the developer,
>
> may be terminated without penalty by such unit owners or such association.

15 U.S.C. § 3607(a).

The issue in this case is whether the termination of the Master Lease was valid because the leased spaces described in (1) to (7) above may be considered "property

serving the ... cooperative unit owners." The seminal case in this regard is *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987). In *West 14th Street,* the court considered whether termination of three leases involving certain property fell within the scope of § 3607. The first of the three leases dealt with a laundry concession, used exclusively by the unit owners. Plaintiffs conceded that this lease was subject to the termination provisions of § 3607, *id.* at 197, but argued that leases relating to an on-site parking garage and retail establishments did not. The Second Circuit agreed.

With respect to the on-site parking, which was open to the public but contained preferences for the unit owners, the court held that "[a] parking garage, with or without tenant preferences, provides a service that tenants *might reasonably expect as an essential adjunct of their apartment complex." Id.* at 198–99 (emphasis added). Conversely, the court found that

> [c]ommercial stores ... are primarily for the benefit of the *public.* Although the availability of commercial stores may be deemed to "relate directly to the ease, comfort and economy of the cooperative shareholders," ... they do not serve as an integral benefit to the unit-holders in the same respect as on-site parking. Concededly, it may be more convenient for unit-owners to have easily accessible banks, cleaners, drug and grocery stores and the like. But these services are not the sort that a tenant should reasonably expect as an essential adjunct of an apartment complex.

*Id.* at 199 (emphasis in original and citation omitted).

Under the reasoning of *West 14th Street,* the termination in the instant case cannot be considered valid. First, the court specifically mentioned that a drug store would not fall within the scope of § 3607. *Id.* Thus, the lease covering the pharmacy could not properly be terminated under § 3607, even if unit owners used its services on occasion. The same reasoning applies to the suite of doctors' offices, whose occupants are gynecologists and obstetricians, as well as to the Sidewalker's restaurant. Although the Cooperative argues that the unit owners use the restaurant frequently, one might legitimately ask how often will the same person dine on boiled crabs?

The Cooperative argues that summary judgment should be denied because the uses to which the leased spaces are being put qualify as "accessory" uses under New York City zoning regulations, designed "substantially for the benefit or convenience of the owners, occupants, employees, customers or visitors of the principal use." Defendant's Memorandum of Law in Support of Cross–Motion at 7, 87 Civ. 784 (JMC) (S.D.N.Y. Oct. 19, 1987) (citation omitted). The Court rejects the Cooperative's argument concerning "accessory uses," finding that Congress clearly intended to promulgate a uniform standard for use in evaluating terminations of contracts and leases under the Act. As the court in *West 14th Street* noted:

> [T]he general purpose of the Act to provide federal relief in an area traditionally reserved to the states coupled with an explicit grant of federal jurisdiction strongly suggests a Congressional purpose to resolve all § 3607 disputes under federal law.

815 F.2d at 194. In this circuit, the uses discussed by the Cooperative, although perhaps providing some modicum of convenience, simply "are not the sort that a tenant should reasonably expect as an essential adjunct of an apartment complex," and "do not serve as an integral benefit to the unit-holders." *Id.* at 199.

■ The Court also rejects the Cooperative's argument with respect to prospective uses of the leased spaces. There is case law holding that the Act covers current uses of space, not potential future uses, since any space might be converted to property serving the unit-owners following termination of the lease. *See Cast Iron Co. v. Cast Iron Corp.,* —— F.Supp. ——, —— —— No. 88 Civ. 155, slip op. at 1–2 (S.D.N.Y. April 28, 1988) (Daronco, J.). The stat-

ute clearly speaks in the present sense when it states that any contract which "provides for operation, maintenance, or management of ... property *serving* the ... cooperative unit owners ..." may be terminated. 15 U.S.C. § 3607(a)(1); *see Cast Iron Co.*, slip op. at 1–2.

Lastly, the Court agrees that it should not be placed in the position of having to sever those portions of the Master Lease which might have been terminated properly under § 3607. A cooperative association is permitted to terminate "[a]ny contract or portion thereof" that serves the cooperative unit owners. 15 U.S.C. § 3607(a). In *King v. 415 Second Owners Corp.*, No. 86 Civ. 4800 (S.D.N.Y. Oct. 14, 1987) (Walker, J., affirming in part Magistrate's Report and Recommendation), the court was faced with an analogous situation. In *King*, there was a commercial lease between the developer and the cooperative association that allowed for the subletting of four retail stores and adjacent basement storage space. The association decided to terminate the entire lease, rather than "portion[s] thereof." The court held that because certain of the leases were not within the scope of § 3607, the association was not entitled to terminate the entire lease. *Id.* The same reasoning applies here and is adopted by the Court. On the other hand, the Court sees no reason why the Cooperative cannot seek to terminate portions of the Master Lease, as specifically provided for by statute. 15 U.S.C. § 3607(a).

Lastly, because the Court concludes that termination of the Master Lease in its entirety was invalid under the Act, it does not reach plaintiff's contention that the February 2, 1987 notice of termination was not served within the time specified in § 3607.

For the foregoing reasons, plaintiff's motion for summary judgment with respect to the Cooperative's termination of the Master Lease is granted; the Cooperative's cross-motion for summary judgment is denied. Fed.R.Civ.P. 56.

## CONCLUSION

Plaintiff's motion for partial summary judgment with respect to its first cause of action, seeking a declaration that defendant's notice of termination of the Master Lease Agreement was invalid, is granted. Defendant's first counterclaim is dismissed and its cross-motion for summary judgment is denied. Fed.R.Civ.P. 56.

SO ORDERED.