941 F.2d 107
 CROMWELL ASSOCIATES, Plaintiff-Appellee,
v.
OLIVER CROMWELL OWNERS, INC., Defendant-Appellant,
and
12 West 72nd Street Corp., Additional Counterclaim Defendant.
 No. 388, Docket 89-7582.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 29, 1990.
Decided July 31, 1991.
 
 Phyllis E. Leviton, New York City (Kurzman Karelsen & Frank, New York City, of counsel), for defendant-appellant.
 Robert J. Zastrow, New York City (John F. Sylvia, Stroock & Stroock & Lavan, New York City, of counsel), for plaintiff-appellee.
 Before ALTIMARI and MAHONEY, Circuit Judges, and GLASSER, District Judge.*
 MAHONEY, Circuit Judge:
 
 
 1
 This is an appeal by defendant-appellant Oliver Cromwell Owners, Inc. (the "Cooperative") from an amended judgment of the United States District Court for the Southern District of New York, John M. Cannella, Judge, that granted plaintiff-appellee Cromwell Associates ("Associates") partial summary judgment declaring that the Cooperative's notice of termination of a lease agreement was invalid. The district court ruled that the Cooperative was not authorized to terminate the lease by 15 U.S.C. § 3607 (1988). See Cromwell Assocs. v. Oliver Cromwell Owners, Inc., 705 F.Supp. 116 (S.D.N.Y.1988).
 
 
 2
 We affirm.
 
 Background
 
 3
 On June 22, 1984, Oliver Cromwell Holding Co. ("Holding Co.") conveyed to the Cooperative title to premises located at 12 West 72nd Street in Manhattan, thereby converting a former rental apartment hotel to a cooperative. As part of the conversion transaction, the Cooperative leased portions of the premises to additional counterclaim defendant 12 West 72nd Street Corp. ("12 West Corp."). 12 West Corp. then assigned its interest in the lease (the "master lease") to Associates. The partners of Holding Co. were shareholders of 12 West Corp., and are partners of Associates. Holding Co. designated the officers and directors of the Cooperative who directed its affairs at the time when the master lease was executed on behalf of the Cooperative.
 
 
 4
 The master lease covers space on the basement, ground floor, and residential floors of the building used as: (1) a seafood restaurant; (2) a pharmacy; (3) a doctors' office; (4) a ground floor office; (5) closets on each floor for linen and cleaning supplies; (6) a linen room in the cellar; and (7) a store room in the cellar. The restaurant, pharmacy, and doctors' office have been sublet. The office is used by Holding Co. and Associates to store records and hold occasional meetings. The closets, linen room, and store room are used by Associates to provide laundry service to the rent-stabilized tenants who chose not to purchase shares of the Cooperative following the conversion. Associates claims, and the Cooperative does not dispute, that no laundry service is provided to any shareholder of the Cooperative.
 
 
 5
 The master lease allows Associates to use the leased space for any lawful purpose that is not "obnoxious, hazardous or immoral." The master lease is for an initial term of twenty years, and Associates has options to extend the term for four additional twenty-year periods. Annual rent starts at fifty thousand dollars, and increases by five percent every five years. Additional rent may be charged to the extent that yearly service costs and taxes attributable to the leased premises exceed the base rental for any year. Associates is entitled to assign and sublet.
 
 
 6
 On February 2, 1987, the Cooperative notified Associates and 12 West Corp. that "by a vote of the owners of the shares allocated to more than two-thirds of the units other than the units owned by the developer," the Cooperative elected to terminate the master lease effective May 3, 1987. The Cooperative claimed to act pursuant to 15 U.S.C. § 3607 (1988),[1] a provision of the Condominium and Cooperative Abuse Relief Act of 1980 (the "Act").
 
 
 7
 Associates then instituted this action seeking, inter alia, a declaratory judgment that the Cooperative's termination of the lease was not valid under section 3607. The United States District Court for the Southern District of New York, John M. Cannella, Judge, granted Associates' motion for summary judgment on that issue on the authority of West 14th Street Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188 (2d Cir.), cert. denied, 484 U.S. 850, 871, 108 S.Ct. 151, 200, 98 L.Ed.2d 850, 871 (1987). The district court ruled that the restaurant, pharmacy, and doctors' offices were not "property serving the ... cooperative unit owners" within the meaning of subsection 3607(a)(1), see 705 F.Supp. at 118; declined to address "prospective uses of the leased spaces," see id. at 118-19; and declined to consider the terminability of the master lease as to the balance of the leased spaces in view of the Cooperative's election to terminate the entire master lease, see id. at 119.
 
 
 8
 This appeal followed.
 
 Discussion
 
 9
 In West 14th Street, we initially addressed the contention that leases are not "contracts" for purposes of section 3607 because the issue of unconscionable leases is covered exclusively by section 3608 of the Act,[2] and therefore is not within the purview of section 3607. We rejected that view, relying, inter alia, upon the definition of "lease" in section 3603 of the Act[3] as directed primarily at leases to a cooperative project by a developer or its affiliate, rather than leases by a developer to an affilitate where the cooperative project succeeds to the obligations of the developer, see 815 F.2d at 197 & n. 4, and upon pertinent legislative history, see id. at 197-98.
 
 
 10
 A state court opinion that addressed this question subsequently took issue with West 14th Street, contending primarily that our reading of the pertinent legislative history was flawed. See Park East Apartments, Inc. v. 233 East 86th Street Corp., 139 Misc.2d 806, 816-19, 529 N.Y.S.2d 674, 681-82 (Civ.Ct.1988), aff'd on other grounds, 143 Misc.2d 60, 543 N.Y.S.2d 610 (App.Term 1989). Nonetheless, we have since reiterated the West 14th Street ruling on this issue. See 2 Tudor City Place Assocs. v. 2 Tudor City Tenants Corp., 924 F.2d 1247, 1251 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 83, --- L.Ed.2d ---- (1991). This threshold question of statutory interpretation is therefore settled in this circuit, absent reconsideration in banc or a differing construction by the Supreme Court. See Leecan v. Lopes, 893 F.2d 1434, 1443 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990); United States v. Salerno, 868 F.2d 524, 534 (2d Cir.), cert. denied, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700; --- U.S. ----, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); Board of Educ. of City School Dist. v. Hufstedler, 641 F.2d 68, 70 (2d Cir.1981); In re Jaylaw Drug, Inc., 621 F.2d 524, 527 (2d Cir.1980).
 
 
 11
 West 14th Street also addressed the dispositive issue in this case, the construction of the provision in subsection 3607(a)(1) that allows unit owners to terminate "[a]ny contract or portion thereof which ... provides for operation, maintenance, or management of ... property serving the ... cooperative unit owners...." West 14th Street involved three leases by a cooperative to affiliates of the sponsor of its conversion that covered a parking garage, a laundry room (used exclusively by the unit owners), and retail stores. 815 F.2d at 191. We concluded that the cooperative could terminate the garage and laundry room leases, but not the retail stores lease. Id. at 201. Addressing the pivotal language of subsection 3607(a)(1), we ruled that the parking garage "provid[ed] a service primarily for the benefit of the cooperative," id. at 198, but that the commercial stores were "primarily for the benefit of the public," as opposed to the unit owners, id. at 199.[4]
 
 
 12
 We agree with the district court, see 705 F.Supp. at 118, that the rationale of West 14th Street requires decision here in favor of Associates. Like the retail stores in West 14th Street, the restaurant, pharmacy, and doctors' office in this case serve the general public at least as much as they do the unit owners. Furthermore, the linen closets, linen room, and store room do not primarily serve the unit owners; they primarily, if not exclusively, serve the rent-stabilized tenants. Nor is the office asserted to have anything to do with the provision of services to the unit owners. Thus, none of the space covered by the master lease is "property serving" the unit owners within the meaning of subsection 3607(a)(1).
 
 
 13
 The district court only considered the subsection 3607(a)(1) status of the restaurant, pharmacy, and doctors' office, reasoning that since the Cooperative had elected to terminate the entire master lease, the court "should not be placed in the position of having to sever those portions of the Master Lease which might have been terminated properly under § 3607." 705 F.Supp. at 119. But see Brabert Realty Co. v. 20125 Owners Corp., 703 F.Supp. 314, 318 (S.D.N.Y.1989). We do not address the issue in those terms, since it appears clear to us that none of the spaces covered by the master lease constitute "property serving the ... cooperative unit owners" within the meaning of subsection 3607(a)(1). We may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely. See In re Chesley v. Union Carbide Corp., 927 F.2d 60, 68 (2d Cir.1991); Larsen v. NMU Pension Trust, 902 F.2d 1069, 1070 n. 1 (2d Cir.1990); Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987).
 
 
 14
 The Cooperative argues that the linen closets, linen room, and store room serve the sponsor in its capacity as a unit owner, because the sponsor continues to own the units that have not been converted, and thus provides services to the rental tenants in its capacity as a unit owner. This does not bring the situation within the purview of subsection 3607(a)(1), which is addressed to "property serving ... cooperative unit owners" in a collective sense, not to property serving a single sponsor/unit owner in its continuing capacity as a landlord.
 
 
 15
 The Cooperative contends that New York City zoning regulations only permit uses for the leased premises that are "accessory" to an apartment hotel, a term defined in the applicable zoning regulation to require a use "substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors" of the apartment hotel. Thus, the Cooperative urges, the permitted uses must necessarily serve the unit owners of the apartment hotel. We agree with the district court, on the contrary, that local zoning law is irrelevant because "Congress clearly intended to promulgate a uniform standard for use in evaluating terminations of contracts and leases under the Act." 705 F.Supp. at 118.
 
 
 16
 The Cooperative also urges that the leased premises should be regarded as falling within the purview of subsection 3607(a)(1) because they are capable, under the master lease, of being utilized to serve the cooperative unit owners. The Cooperative stresses that unlike the leases in West 14th Street, the master lease in this case allows the leased premises to be used for "any lawful purpose" that Associates may select.
 
 
 17
 The district court recognized that the use of these premises may change over time, but concluded from the present tense use of the word "serving" in subsection 3607(a)(1) that the current use is the test. See 705 F.Supp. at 118-19. Cases that have addressed the issue support this analysis. See Cast Iron Co. v. Cast Iron Corp., 707 F.Supp. 655, 656 (S.D.N.Y.1988) ("the language of § 3607(a)(1) refers to the present state of affairs ... and not to future possibilities"); Park East, 139 Misc.2d at 820, 529 N.Y.S.2d at 683 ("The permitted use here, 'any lawful purpose,' does not change the essential characteristic of the space--a retail store on a busy commercial street."). In addition, it is the more natural reading of the statutory language.
 
 
 18
 Finally, in view of our conclusion that the master lease does not fall within the purview of subsection 3607(a)(1), we do not reach Associates' contention that the Cooperative's notice of termination was untimely under subsection 3607(b). See generally 2 Tudor City Place, 924 F.2d at 1252-53; Brabert, 703 F.Supp. at 316-17.
 
 Conclusion
 
 19
 The amended judgment of the district court is affirmed.
 
 
 
 *
 The Honorable I. Leo Glasser, Judge of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 Section 3607 provides:
 (a) Operation, maintenance, and management contracts; penalty
 Any contract or portion thereof which is entered into after October 8, 1980, and which--
 (1) provides for operation, maintenance, or management of a condominium or cooperative association in a conversion project, or of property serving the condominium or cooperative unit owners in such project;
 (2) is between such unit owners or such association and the developer or an affiliate of the developer;
 (3) was entered into while such association was controlled by the developer through special developer control or because the developer held a majority of the votes in such association; and
 (4) is for a period of more than three years, including any automatic renewal provisions which are exercisable at the sole option of the developer or an affiliate of the developer,
 may be terminated without penalty by such unit owners or such association.
 (b) Time of termination
 Any termination under this section may occur only during the two-year period beginning on the date on which--
 (1) special developer control over the association is terminated; or
 (2) the developer owns 25 per centum or less of the units in the conversion project,
 whichever occurs first.
 (c) Vote of owners of units
 A termination under this section shall be by a vote of owners of not less than two-thirds of the units other than the units owned by the developer or an affiliate of the developer.
 (d) Effective date of termination
 Following the unit owners' vote, the termination shall be effective ninety days after hand delivering notice or mailing notice by pre-paid United States mail to the parties to the contract.
 
 
 [2]
 15 U.S.C. § 3608(a) (1988) provides in pertinent part:
 Cooperative and condominium unit owners through the unit owners' association may bring an action seeking a judicial determination that a lease or leases, or portions thereof, were unconscionable at the time they were made. An action may be brought under this section if each such lease has all of the following characteristics:
 (1) it was made in connection with a cooperative or condominium project;
 (2) it was entered into while the cooperative or condominium owners' association was controlled by the developer either through special developer control or because the developer held a majority of the votes in the owners' association;
 (3) it had to be accepted or ratified by purchasers or through the unit owners' association as a condition of purchase of a unit in the cooperative or condominium project;
 (4) it is for a period of more than twenty-one years or is for a period of less than twenty-one years but contains automatic renewal provisions for a period of more than twenty-one years;
 (5) it contains an automatic rent increase clause; and
 (6) it was entered into prior to June 4, 1975.
 
 
 [3]
 15 U.S.C. § 3603 (1988) provides in pertinent part:
 For the purpose of this chapter--
 (16) "lease" includes any agreement or arrangement containing a condominium or cooperative unit owner's obligation, individually, collectively, or through an association to make payments for a leasehold interest or for other rights to use or possess real estate, or personal property (which rights may include the right to receive services with respect to such real estate or personal property), except a lease does not include mortgages or other such agreements for the purchase of real estate[.]
 
 
 [4]
 No separate analysis was accorded to the laundry room, since the developer apparently conceded that it came within subsection 3607(a)(1). See 815 F.2d at 198